Edwards *v.* McClave.

FRANK C. EDWARDS et al.

*v.*

NORMAN McCLAVE et al.

55  151
55  180
s55  822
55  151
d58  164

55  151
e63  498

1. Under act of March 7th, 1797 (*Rev. p. 476*), providing that any creditor may maintain an action against the heirs of a deceased debtor on a simple contract or specialty, the liability of the heirs on a note executed by decedent is purely legal and cannot be enforced by a bill in equity.

2. On a bill in equity, brought against the administrator and the heirs-at-law, for the sole benefit of a single creditor of the estate, whose claim has not been admitted by the administrator nor established against him by judgment or decree, the court has no power to render a decree against the heirs, charging the debt on the lands or directing the sale thereof for its payment.

3. A note executed by H. for the accommodation of E., to whose order it was made payable, was delivered by the latter, after the death of H., but before maturity, to complainant, who had no notice of its accommodation character. By mistake the note was not endorsed, but E. executed a writing certifying that said note endorsed by him was deposited as collateral security for a loan, and authorizing the holder to negotiate it if the loan was not paid. On default in such payment, complainant, without having obtained judgment at law against the administrator, who had rejected the claim, filed a bill in equity against him and E. to compel the endorsement of the note and to charge its payment on decedent's lands, the heirs-at-law being also parties defendant, but the bill alleged that E. was a non-resident and that it was impossible to serve him with process.—*Held*, that as a decree for specific performance of E.'s contract to endorse could not be decreed for want of jurisdiction over his person, no decree could be rendered against the administrator.

4. Where it appears on the face of a bill that defendants were non-residents at the time suit was commenced, and that the action does not relate to any of the subjects in respect of which the court is warranted in exercising jurisdiction over non-residents, a demurrer for want of equity will be allowed.

On bill and demurrer.

*Mr. Howard W. Hayes,* for the complainants.

*Mr. Edwin B. Williamson,* for the demurrants.

EMERY, V. C.

The bill in this case is filed by two complainants, Frank C. Edwards and Charles Bierman, against the administrator and the infant heirs-at-law of Hannah McClave, deceased, and also against one E. Wilkes McClave. Separate demurrers have been filed by the administrator and on behalf of the infant heirs-at-law, the special causes assigned being remedy at law, misjoinder of complainants and multifariousness. The demurrer of the administrator sets up in addition that no relief is prayed against the administrator. At the hearing the want of equity was also relied on, on behalf of all demurrants. The complainants, as appears by the bill, are the holders of, or interested in, a certain promissory note for $648, dated September 3d, 1891, at four months, signed by Hannah McClave, deceased, in her lifetime, for the accommodation of the defendant E. Wilkes McClave, the payee of the note. This note was delivered to the complainants or one of them by E. Wilkes McClave, after the death of Hannah McClave, who died on September 23d, 1891, but before the maturity of the note, and was delivered by E. Wilkes McClave as collateral security for the payment of a loan then made by complainants to him upon four of his own notes, aggregating $350. Upon obtaining the loan and delivering the note by Hannah McClave, the defendant E. Wilkes McClave failed to endorse this note, which was payable to his order, but executed and delivered to the complainant Edwards a writing set out in the bill certifying that the note of Hannah McClave, deceased, endorsed by him, was deposited with Edwards as collateral security for his (E. Wilkes McClave) own notes, and authorizing Edwards, on his failure to pay these, to collect, sue for, sell, transfer or in any way negotiate or collect the Hannah McClave note for any price he might obtain for the same, rendering the overplus to him. The bill alleges that it was the intention of E. Wilkes McClave and of the complainants that the note should be endorsed by E. Wilkes McClave, but that this was neglected by mistake.

Hannah McClave died intestate on September 21st, 1891, and E. Wilkes McClave was appointed administrator of her estate,

but was subsequently removed and the defendant John McClave appointed in his place. The notes of Edward Wilkes McClave were not paid at maturity, and, as the bill alleges, the complainant Edwards presented due proof of the Hannah McClave note to John McClave as her administrator, but he refused to pay the same or any part thereof. On August 16th, 1892, the complainant Edwards began a suit by attachment upon the note against the heirs of Hannah McClave, who were then non-residents. The defendant heirs appeared in this suit, filed pleas and gave specifications of defences, one of which was that the note of Hannah McClave was without consideration. The testimony of E. Wilkes McClave, taken out of the state by commission, disclosed that the note was given for his accommodation, and this was the first information to the complainants that the note was not given for value. The complainant brought the suit to trial, relying on his title to the note by assignment, and judgment was rendered in favor of the infant heirs. No suit at law appears to have been brought against the administrator of Hannah McClave upon the note. This bill is filed against the heirs for the purpose of charging the lands described in the bill, which have descended to the heirs-at-law, with the payment of the note, and prays that the lands of the deceased may be sold for the payment of the note. No special relief is prayed against the administrator, neither is any statement made in the bill as to the personal estate of the deceased, nor has any suit at law been commenced against the administrator to recover upon the note. A decree that E. Wilkes McClave may endorse the note is asked for, but the bill alleges that he is a non-resident and that it is impossible to serve him with process or compel his endorsement. So far as the heirs are concerned, the claim of the complainants must therefore be treated, I think, as substantially a claim against the heirs-at-law of the deceased maker of the note, to subject the lands inherited to sale by suit in equity for an alleged obligation or debt of their ancestor. The complainant's equity for relief upon the note as against E. Wilkes McClave, the payee, is based upon his agreement to endorse the note, made upon good and valuable consideration

and without notice that it was accommodation paper. Had such notice been given, the delivery of the note, after the death of the accommodation maker, would seem to have been invalid. *1 Am. & Eng. Encycl. L. (2d ed.) 341 and notes 4 and 5.* To this agreement for endorsement made between the complainants and the payee Hannah McClave, the maker, was no party, and although E. Wilkes McClave could certainly be compelled to endorse the note in order that the complainants might sue the maker at law, it does not seem to be entirely clear that in such case a bill in equity would lie against the maker, if living, in connection with the payee, to compel payment of the note by final decree in equity in the suit brought to compel the endorsement. A bill in such a case, where the maker and payee were joined, was sustained on demurrer by Vice-Chancellor Van Fleet, in *Nelson* v. *Hughes, 2 Stew. Eq. 547*, but in that case the complainant was held to have no legal title whatever, and the question argued and decided was the effect of the judgment at law as preventing any relief. The case did not proceed to final decree, nor was the form of relief to be finally granted considered. The cases cited by the learned vice-chancellor upon the right of a court of equity to compel endorsement by the payee, are all cases where the application was made against the assignees in bankruptcy of the payee without joining the maker, and the only order directed was that the endorsement be made. The parties seem to have been then left to pursue their remedy upon the endorsed paper. *Ex parte Greening, 13 Ves. 206; Ex parte Mowbray, 1 Jac. & W. 428; Ex parte Rhodes, 3 Mont. & A. 217.*

In *Watkins* v. *Maule, 2 Jac. & W. 243*, the endorsement, which had been omitted to be made by the payee of an accommodation note, was made, after his death and after the maturity of the note, by his administrator, and the question in the case (which arose on a creditor's bill for the administration of the maker's estate) was whether the endorsement after maturity related back to the time the note was taken. The master of the rolls (Sir Thomas Plumer) held that it did so relate back, but this is a point upon which demurrants' counsel claims that other learned

judges have taken different views. The contract of the maker upon the note was, in its inception, a purely legal contract on his part, and having no connection with the contract relating to endorsement made between the payee and the transferee, it would seem logical that the maker's only liability for the payment of the note was a legal liability to be decided upon in a court of law after a court of equity had compelled the endorsement on the bill by the payee or transferer according to his agreement. Otherwise the maker would be obliged to set up in the equity suit any defence to the note and would be deprived of his right to a trial by jury in a suit upon the note. But without turning the case upon this point, and taking *Nelson* v. *Hughes* to be an authority for proceeding to final decree for payment of the note against the maker in the suit in equity to compel the endorsement, the case does not reach the main point now involved, which is whether the obligation of the deceased ancestor on the note can be enforced by a bill in equity against his heirs-at-law, either as a personal debt or as a charge on the lands descended. And I am of opinion that no such liability, either by personal decree or by charge on their lands, can be enforced against the heirs on this bill. The reason is that the obligation of the heirs for the payment of the ancestor's debts of this character is a purely statutory liability, arising under the act of March 7th, 1797 (*Rev. p. 476*), and it has always been held that under this statute the liability of heirs is purely legal and enforceable only by action at law. *Meeker* v. *New Jersey Insurance Co., 8 Vr. 282, 299; Mutual Insurance Co.* v. *Hopper, 16 Stew. Eq. 387; affirmed, 17 Stew. Eq. 604.*

In *Holley* v. *Weedon, 1 Vern. 400 (1686)*, an action at law was brought against the heir-at-law upon a bond of the ancestor. The heir put in a false plea, and after verdict in the plaintiff's favor, but before the time for entering judgment on it, the defendant died, having devised the lands descended. On a bill against the devisee to be paid the debt, Lord-Chancellor King said: "Dismiss the bill; there is no color of equity in the case unless you'll have it that the heir died maliciously before day *in banc* on purpose to defeat plaintiff in his debt."

Nor can there, on this bill, be any decree that the lands descended to the heirs are chargeable with the amount of the note as debts of the deceased ancestor. This is not a creditor's bill for the general administration of a decedent's estate, and bringing all the estate of deceased, both real and personal, into the court for administration, but a bill by one creditor to establish an alleged obligation against decedent's estate, upon the establishment of which he asks that a decree may be made for its payment out of the real estate of the deceased. There are no allegations in the bill in reference to the personal estate, which is the primary fund for payment of obligations of this character, and even on the supposition that there was no personal estate whatever, the claim, as it seems to me, not being admitted by the administrator, must first be regularly established by judgment or decree against him before the lands which have descended to the heirs can be sold by the court. If established against him, by judgment or decree, and the personal estate is insufficient to pay the demand, the creditor would then be in a position to apply to enforce the payment of the debt by sale of the lands under the Orphans Court act, on which application the heirs are entitled to be heard. But it would seem to be beyond the power of a court of equity, as against the heirs-at-law, to enforce against them a sale of lands by decree in this suit, brought for the sole benefit of a single creditor whose claim is not admitted by the administrators and who has not established his claim by judgment or decree against him.

*Haston* v. *Castner, 4 Stew. Eq. 697 (Errors and Appeals, 1879)*, decides that a creditor whose claim has been presented to the administrator, and its validity admitted by him, may, without obtaining judgment, file a bill in behalf of himself and other creditors to set aside conveyances of land made by the deceased in fraud of his creditors. The estate in this case had, however, been settled as an insolvent estate before the filing of the bill, so that the jurisdiction of the orphans court was at an end. And in the later case (*Mayor &c. of Rutherford* v. *Alyea, 34 Atl. Rep. 1078 (Errors and Appeals, June, 1896)*), the court decided that, on a bill by a creditor for his

Edwards v. McClave.

sole benefit, the court of equity will not, except for special cause, interfere with the jurisdiction of the orphans court for the settlement of accounts of executors and administrators. This settlement in the orphans court includes the application of real estate of the deceased for the payment of his debts, which application may, if necessary, be made by the creditor after establishing his claim by judgment against the executor or administrator. *Rev. p. 769 § 79, tit. "Orphans Court."* In the absence, therefore, of any facts alleged in the bill showing the equity of complainants to require a general settlement of the estate in this court, and a sale by the court of the lands of the deceased, including complainant's claim, if it be eventually established, I conclude that no decree can be granted against the heirs-at-law on this bill charging the debt on the lands or directing the sale thereof for the purpose of payment. I do not consider the effect of the judgment at law in favor of the heirs-at-law, as this question may arise on any application for sale of the lands to pay complainant's debt if it should be hereafter established against the administrator, and the consideration of the question is not necessary for the decision of this case.

So far, therefore, as the present bill seeks to charge the heirs-at-law personally, or the lands descended to them, with the payment of the note, it is without equity and must be dismissed. As against the administrator, my view is that if the complainants on the present bill could obtain a decree against E. Wilkes McClave for the endorsement of the note, then on the authority of *Nelson* v. *Hughes, supra,* the administrator might perhaps be a proper if not a necessary party to the suit, as the personal representative of the deceased maker, who is interested in determining the validity of the claims against the estate. The claim of the bill is that if the endorsement is made by decree of the court, the complainant is entitled to stand equitably in the same situation as if the endorsement was made at the time of the transfer, and the personal representative of the maker of the note may, therefore, perhaps properly be a party to a suit to compel the payee to endorse the note, but unless the final result of the

Edwards *v.* McClave.

suit is a decree for endorsement by the payee, the maker's representative is under no equitable obligation upon the note.

If the court cannot decree specific performance of the contract to endorse, it cannot, as it seems to me, decree a liability against the maker, as if the note were endorsed. If this view be correct, the complainant's bill must fail as against the administrator, for the reason that it discloses that no such decree can be rendered against E. Wilkes McClave, the payee, because he is not within the jurisdiction of the court, and the bill states that he cannot be brought within its jurisdiction, and the decree for payment without endorsement is prayed. A decree for endorsement of the note made against the payee upon publication and without obtaining jurisdiction over his person, would be without due process of law under the fourteenth amendment to the federal constitution as construed in *Pennoyer* v. *Neff, 95 U. S. 714.*

It appearing, therefore, by the bill itself, that the contract which lies at the basis of the whole proceeding, viz., the personal contract of E. Wilkes McClave to endorse the note, cannot be enforced by reason of the want of jurisdiction over his person, I am of opinion that no decree against the administrator can be made upon the bill, even if it had been prayed for, and as to him also the bill must be dismissed. Where it appears on the face of the bill that the defendants were, at the time of the institution of the suit, resident in a foreign country, and that the suit does not relate to any of the subjects in respect of which the court is warranted in exercising jurisdiction against persons so resident, a demurrer for want of equity will be allowed. *1 Dan. Ch. Pr. (6th Am. ed.) *550.*

An order will be advised sustaining the demurrer, with costs.